**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**RYAN BARBUR, 04-B-0087,**

        Petitioner

v.

**SUPERINTENDENT OF THE WENDE**
**CORRECTIONAL FACILITY,**                      05-CV-709(Sr)

        Respondent

---

## DECISION AND ORDER

In accordance with 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct all further proceedings, including entry of judgment, with respect to this petition for *habeas corpus* relief pursuant to 28 U.S.C. § 2254. Dkt. #18.

Petitioner, proceeding *pro se*, challenges his sentence to a determinate term of 20 years incarceration following his guilty plea to the crime of first degree assault in violation of New York Penal Law § 120.10(3), before the Hon. Robert C. Noonan, Genesee County Court, on the ground that: (1) New York lacks jurisdiction to prosecute crimes committed against Indians on the Tonawanda Indian Reservation; (2) the relationship between Judge Noonan and District Attorney Lawrence Friedman violated petitioner's constitutional right to due process; and (3) the sentence imposed was harsh and excessive. Dkt. ##1 & 6. For the following reasons, the petition is denied.

## BACKGROUND

On December 3, 2003, petitioner and his attorney appeared before Judge Noonan and entered a plea of guilty to one count of first degree assault in violation of New York Penal Law § 120.10(3),[1] in full satisfaction of an eleven count indictment relating to an incident on July 3, 2003. Dkt. #10-2, p. 7. Petitioner informed Judge Noonan that he was 19 years old and had completed the 9th grade. Dkt. #10-2, p.11. Petitioner expressed his understanding that by entering the plea, he was giving up his rights to a trial by jury, to confront witnesses, to call witnesses and present evidence on his own behalf, to testify on his behalf if he so chose, and to hold the government to their burden of proving petitioner's guilt beyond a reasonable doubt. Dkt. #10-2, p.12.

Judge Noonan informed petitioner that the maximum sentence that could be imposed was 25 years and that he would also be subjected to post release supervision for a maximum period of five years. Dkt. #10-2, p.13. Petitioner responded affirmatively when asked whether he was prepared to "run the risk" that Judge Noonan would "impose that maximum sentence." Dkt. #10-2, p.13. Petitioner also responded affirmatively when asked whether he had confidence in counsel's assistance and whether he had enough time to speak to his attorney regarding the consequences of the plea. Dkt. #10-2, pp.14 & 16. Petitioner denied any coercion to enter the guilty plea and denied that any promises had been made to him other than what was discussed in open court. Dkt. #10-2, p.14.

---

[1] New York Penal Law § 120.10(3) provides that "[a] person is guilty of assault in the first degree when . . . [under] circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person.

Petitioner informed Judge Noonan, that on July 3, 2003, at 7132 Poodry Road in the Town of Alabama, he recklessly fired a gun under circumstances evincing a depraved indifference to human life and creating a grave risk of death to another person, causing serious physical injury to Dana Printup. Dkt. #10-2, pp.15-16. Judge Noonan accepted petitioner's guilty plea. Dkt. #10-2, p.17.

At sentencing on January 7, 2004, Lesley Green and Dana Printup each addressed the Court. Ms. Green informed the Court that she woke her sister up because someone was banging on the front door at approximately 11:30 p.m. on July 3, 2003, but wouldn't respond to her request for identification. Dkt. #10-2, pp.26-27. As Ms. Green and her sister, Dana Printup, walked toward the door, the wall of their home exploded from gunfire. Dkt. #10-2, pp.27 & 30. As the sisters ran away from the door back towards the kitchen, Ms. Green felt a bullet go through her arm and observed her sister's pajama top melt and blood pour out her back. Dkt. #10-2, p.28. As Ms. Printup fell to the kitchen floor, Ms. Green reached the telephone and called 911. Dkt. #10-2, p.29. Ms. Printup had been shot twice in the upper left chest, suffering a collapsed lung and broken rib with multiple shrapnel throughout the left side of her body. Dkt. #10-2, p.31.

Petitioner apologized to his victims and his counsel advocated a minimum sentence based upon petitioner's acceptance of responsibility and remorse. Dkt. #10-2, pp.35-36. . Dkt. #10-2, p.36. Judge Noonan sentenced petitioner to a determinate sentence of 20 years incarceration, followed by 5 years post release supervision. Dkt. #10-2, p.37.

Petitioner appealed to the New York State Supreme Court, Appellate Division, Fourth Department, arguing by way of counsel that his sentence was harsh and excessive and by way of a *pro se* supplemental brief, that the relationship between Judge Noonan and District Attorney Lawrence Friedman violated his constitutional right to due process and that New York lacked jurisdiction over his offense. Dkt. #10-2, pp.41 & 62. In support of his due process claim, petitioner argued that

> Justice Robert Noonan was the Head District Attorney with Lawrence Friedman acting as First Assistant District Attorney for Genesee County. Upon Robert Noonan's resignation as the Head District Attorney, Lawrence Friedman was the District Attorney who eventually was promoted to the Head District Attorney.
>
> There was a law firm of Noonan, Yunker, and Friedman which was renamed Noonan and Friedman after Mr. Yunker left the firm. This makes Judge and District Attorney law firm partners, partners in the District Attorney's office and personal friends all within a fifteen (15) year time frame.
>
> There is no possible way Robert Noonan can be fair, detached, neutral, or a noninterested tribunal in any proceedings which involve the Genesee [County] Sheriff's Department, Lawrence Friedman, Genesee County District Attorney's Office and other police agencies. Any charges . . . that Lawrence Friedman prosecutes should require immediate recusal of Robert Noonan.

Dkt. #10-2, p.68. The Appellate Division affirmed the judgment of conviction by Order entered February 4, 2005. *People v. Barbur*, 15 A.D.3d 1015 (4th Dep't 2005). The New York Court of Appeals denied leave to appeal by Order entered July 5, 2005. *People v. Barbur*, 5 N.Y.3d 785 (2005). Petitioner commenced this action on October 7, 2005. Dkt. #1.

## **DISCUSSION AND ANALYSIS**

### **Exhaustion**

Before a federal court can address the merits of any federal issue contained in a petition for a writ of *habeas corpus,* the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 843-44 (1999). "Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained." *Hogan v. Ward,* 998 F. Supp. 290, 293 (W.D.N.Y. 1998), *citing Daye v. Attorney Gen. of the State of N.Y.,* 696 F.2d 186, 190 n.3 (2d Cir. 1982); *see O'Sullivan*, 526 U.S. at 839-40 ("a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement."). Since petitioner raised each of the three issues presented in this petition for writ of *habeas corpus* to the Appellate Division, Fourth Department and then requested leave to appeal that decision to the New York State Court of Appeals, his claims are exhausted.

### **AEDPA Standard of Review**

Pursuant to the Antiterrorism and Effective Death Penalty Act ("AEDPA"), where a state court has adjudicated the merits of a petitioner's claim, relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The amended standard of § 2254(d)(1) requires the federal court to give considerably more deference to the state court's legal determinations than did the pre-AEDPA standard. *Marcelin v. Garvin*, No. 97 CIV 2296, 1999 WL 977221, at *6 (S.D.N.Y. Oct. 26, 1999); *Tascarella v. Reynolds*, No. 97 CV 111, 1998 WL 912010, at *1-2 (W.D.N.Y. Dec. 30, 1998). As stated by the United States Supreme Court:

> § 2254(d)(1) places a new constraint on the power of a federal *habeas* court to grant a state prisoner's application for a writ of *habeas corpus* with respect to claims adjudicated on the merits in state court. . . . Under the "contrary to" clause, a federal *habeas* court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J.); *see Sacco v. Cooksey*, 214 F.3d 270, 273 (2d Cir. 2000), *cert. denied*, 531 U.S. 1156 (2001). Thus, a federal court may only grant *habeas* relief where the state court's application of clearly established federal law was not only erroneous, but objectively unreasonable. *Williams*, 529 U.S. at 409; *see Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) ("We cannot grant relief under AEDPA by conducting our own independent inquiry into whether the

state court was correct as a *de novo* matter."). This deference applies even where, as here, the state court does not explicitly refer to either the federal claim or to relevant federal case law in addressing the merits of the claim, but simply issues a summary decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

**<u>Jurisdiction</u>**

Petitioner argues that New York lacks subject matter jurisdiction for crimes committed on an Indian reservation against Indian victims as a result of a conflict between 18 U.S.C. § 1152 and 25 U.S.C. § 232. Dkt. #27.

> 18 U.S.C. § 1152 states:
>
> Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.
>
> This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

As petitioner is not an Indian, the exclusionary paragraph of section 1152 does not apply. The Indian Major Crimes Act, which was enacted in 1885 to confer exclusive federal court jurisdiction over a limited number of offenses committed by Indians against Indians on Indian territory, is similarly inapplicable to petitioner. *See Negonsott v. Samuels,* 507 U.S. 99, 103 (1993) ("federal jurisdiction over the offenses covered by

the Indian Major Crimes Act is 'exclusive' of state jurisdiction" absent Congressional alteration of that jurisdictional provision).

In 1940, Congress passed the Kansas Act, which was "the first major grant of jurisdiction to a State over offenses involving Indians committed in Indian country." *Id.* The statute provides as follows:

> Jurisdiction is conferred on the State of Kansas over offenses committed by or against Indians on Indian reservations . . . within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere in the State in accordance with the laws of the State.
>
> This section shall not deprive the courts of the United States of jurisdiction over offenses defined by the laws of the United States committed by or against Indians on Indian Reservations.

*Id.*, *citing* 18 U.S.C. § 3243. Subsequently, Congress granted jurisdiction over criminal offenses to the state of New York, as well. 25 U.S.C. § 232 provides that:

> The State of New York shall have jurisdiction over offenses committed by or against Indians on Indian reservations within the State of New York to the same extent as the courts of the State have jurisdiction over offenses committed elsewhere within the State as defined by the laws of the State: *Provided*, That nothing contained in this section shall be construed to deprive any Indian tribe, band, or community, or members thereof, [of] hunting and fishing rights as guaranteed them by agreement, treaty, or custom, nor require them to obtain State fish and game licenses for the exercise of such rights.

The Court of Appeals for the Second Circuit determined that "[t]he plain language of [25 U.S.C. § 232] leads us to conclude that [the statute] extended

concurrent jurisdiction to the State of New York." *United States v. Cook*, 922 F.2d 1026, 1033 (2d Cir.), *cert. denied sub nom Tarbell v. United States*, 500 U.S. 941 (1991); *see also United States v. Markiewicz,* 978 F.2d 786, 803 (2d Cir. 1992), *cert. denied sub nom Beglen v. United States*, 506 U.S. 1086 (1993). In *Negonsott,* the Supreme Court similarly determined that the most logical meaning of the Kansas Act was that Kansas courts were afforded jurisdiction to try persons for all offenses subject to federal jurisdiction under 18 U.S.C. §§ 1152 and 1153 when such offenses also violated state law, but declined to characterize the statute as establishing "concurrent jurisdiction," explaining:

> the Kansas Act does not confer jurisdiction on Kansas to prosecute individuals for the federal offenses listed in the Indian Major Crimes Act; it confers jurisdiction to prosecute individuals in accordance with state law for conduct that is also punishable under federal law pursuant to the Indian Major Crimes Act. Strictly speaking, then, federal courts retain their exclusive jurisdiction to try individuals for offense covered by the Indian Major Crimes Act, and in this sense, the Kansas Act in fact confers only concurrent "legislative" jurisdiction on the State to define and prosecute similar offenses.

*Id.* at 105.

Regardless of whether it is denominated "concurrent jurisdiction" or "concurrent 'legislative' jurisdiction on the State to define and prosecute similar offenses," it is clear that New York possesses jurisdiction to enforce its criminal laws against petitioner. As a result, the state courts' denial of petitioner's jurisdictional claim was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**Bias**

Petitioner argues that the relationship between Judge Noonan and Lawrence Friedman violated his due process rights. Dkt. #1, p.8.

To prevail on a claim of judicial bias, petitioner must demonstrate that he did not receive a trial "by an unbiased and impartial judge without a direct personal interest in the outcome of the hearing." *Ungar v. Sarafite*, 376 U.S. 575, 584 (1964). "Mere allegations of judicial bias or prejudice do not state a due process violation." *Brown v. Doe,* 2 F.3d 1236, 1248 (2d Cir. 1993), *cert. denied,* 510 U.S. 1125 (1994). Moreover, "most matters relating to judicial disqualification [do] not rise to a constitutional level." *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948). Indeed, "a petitioner claiming that a judge's bias deprived him of a fair trial faces a difficult task." *Gayle v. Scully*, 779 F.2d 802, 806 (2d Cir. 1985), *cert. denied*, 479 U.S. 838 (1986). "[T]he law will not suppose a possibility of bias or favour in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea." *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820 (1986), *quoting* 3 W. Blackstone, Commentaries *361.

Judge Noonan's prior history as District Attorney and previous professional relationship with the current District Attorney is insufficient to raise even a colorable claim of bias. Moreover, nothing said during the course of petitioner's plea allocution or sentencing suggests bias by Judge Noonan. As a result, the state courts' denial of petitioner's claim of a due process violation was neither contrary to, nor involved an unreasonable application of, clearly established federal law.

**Harsh and Excessive Sentence**

Petitioner argues that his sentence was harsh and excessive because this was his first violent felony offense and because he expressed remorse for his actions at sentencing. Dkt. #6, p.1.

"[A] sentence imposed within the range prescribed by state law does not present a question of constitutional dimensions and therefore cannot be subject to habeas corpus review." *McColly v. Brunelle*, 980 F. Supp. 691, 697 (W.D.N.Y. 1997); *see Kressner v. Supras*, 826 F. Supp. 657, 663 (W.D.N.Y. 1993); *Castro v. Sullivan*, 662 F.Supp. 745, 753 (S.D.N.Y. 1987) (collecting cases). In the instant case, petitioner entered a guilty plea to the crime of first degree assault, a Class B violent felony, for which the New York Penal Law prescribes a determinate sentence between 5 and 25 years. New York Penal Law § § 70.02 (1)(a) & 120.10(3). Since the sentence imposed falls within the legal range, this Court has no basis to review petitioner's sentence.

## CONCLUSION

Based on the foregoing, the petition is denied.

**SO ORDERED.**

**DATED:** Buffalo, New York
May 5, 2010

        s/ H. Kenneth Schroeder, Jr.
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**